## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CURTIS KLUG, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>WATTS REGULATOR COMPANY and WATTS WATER TECHNOLOGIES, INC.,<br><br>    Defendants. | **Civil Action No.:**<br><br>**Complaint – Class Action**<br><br>**Jury Trial Demanded**<br><br>**ELECTRONICALLY FILED** |

Plaintiff Curtis Klug ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action against Defendants Watts Regulator Company and Watts Water Technologies, Inc. (collectively "Watts" or "Defendants"). In support thereof, Plaintiff alleges as follows based upon personal knowledge as to his own conduct and on information and belief as to the acts of others.

## NATURE OF THE ACTION

1.      Watts manufactures and markets a line of water supply connectors known as FloodSafe® Auto-Shutoff Connectors, which are used to supply water to common household fixtures and appliances including faucets, toilets, washing machines, dishwashers, and icemakers (hereinafter, the "FloodSafe Connectors"). A specific description and sample pictures of the FloodSafe Connectors are set forth in paragraphs below.

2.      This lawsuit arises out of damages sustained by Plaintiff and the Class that were proximately caused by Watts' defective FloodSafe Connectors, which were used in Class members' homes and other structures.

3.      Plaintiff brings this class action against Watts on behalf of himself and all individuals and entities that own or have owned FloodSafe Connectors or who own or have owned homes or other structures physically located in the United States, in which FloodSafe Connectors are or were installed (the "Nationwide Class").[1]

4.      As evidenced by the name of its product, Watts pursued an aggressive branding and marketing strategy with respect to its FloodSafe Connectors, stating that "The floodSafe's [sic] patented design protects against catastrophic water damage caused by burst, broken or ruptured water supply hoses and fittings."

5.      Watts claims on its website that FloodSafe Connectors are "[t]he only economical and secure safeguard against catastrophic water damage available on the market." Watts also promises that the connectors are "Maintenance free" and that consumers can expect "years of maintenance free operation."

6.      Watts' website acknowledges that "[w]ater supply hoses are vulnerable to a number of potential problems. Over time, hoses can become brittle and burst. Poorly manufactured hoses can break under normal pressure conditions and hoses used in public venues are highly vulnerable totampering [sic] by vandals. All of these conditions can lead to a flood of problems for homeowners, property managers and maintenance personnel."

7.      Watts promises that the FloodSafe Connector is the solution to these problems by stating: "Watts FloodSafe® auto-shutoff connectors protect against catastrophic water damage by automatically shutting off the water supply to plumbing fixtures/appliances if excess water flow is sensed. Water flow through the FloodSafe® device is limited to a factory preset flow rate, any flow over the preset rate will automatically shutoff all flow of water through the

---

[1] Alternatively, or in addition to the Nationwide Class, Plaintiff brings claims on behalf of state-specific class, the Nebraska Class, as defined below.  The Nationwide Class and the Nebraska Class are collectively referred to herein as the "Class."

device."

8.      However, because of defective design and manufacturing, Watts' FloodSafe Connectors prematurely fracture and fail at the "automatic shut-off device" on a routine basis.

9.      Far from protecting against catastrophic water damage, Watts FloodSafe Connectors actually cause catastrophic water damage.

10.     Thousands of Watts' FloodSafe Connectors have been, and continue to be, purchased and installed in residential and commercial buildings across the country. Rather than the dependable, heavy-duty parts that Watts represents them to be, the FloodSafe Connectors are inevitable failures waiting to happen, with the potential to cause a range of damages including catastrophic flooding and property destruction. Furthermore, the failure of and flooding caused by Watts FloodSafe Connectors place individuals at risk to their personal safety since many FloodSafe Connectors are installed in close proximity to electrical outlets, electrical appliances, and even circuit boxes.

11.     Despite Watts' representations regarding the high quality of its FloodSafe Connectors, Watts knows and has known of the specific manufacturing and material defects alleged herein and knows that there is a substantial risk that its FloodSafe Connectors will fracture and fail.

12.     Watts has failed to disclose this risk of failure to consumers.

13.     As a result of the defects in Watts' FloodSafe Connectors, Plaintiff and the Class have suffered damages, including significant real and personal property damage caused by flooding from fractured FloodSafe Connectors. In addition, Plaintiff and the Class have suffered harm in the form of the loss of the benefit of the bargain, in that they paid for a product that was worth less than what was represented by Watts. Plaintiff and the Class would not have purchased

3

their FloodSafe Connectors had they known of the defect at the time of sale.  Furthermore, Plaintiff and Class members must replace and discard their FloodSafe Connectors sooner than reasonably expected.

14.     Plaintiff seeks to recover, for himself and the Class, all costs associated with repairing, removing and/or replacing his and Class members' FloodSafe Connectors, as well as the costs of repairing any damage to real and personal property, and other consequential damages (like remediation of water damage, loss of use of the property, and so on) caused by the failure of the FloodSafe Connectors to perform as represented and warranted. Plaintiff also seeks injunctive relief requiring Watts to modify its unfair and fraudulent practices so as to uniformly provide relief in accordance with its obligations under the law.

## PARTIES

*Plaintiff*

### A.     Curtis Klug

15.     Plaintiff Curtis Klug is an adult individual who is a citizen of Nebraska and resides in Humphrey, Nebraska.

16.     In 2013, Mr. Klug purchased two FloodSafe Connectors at Menards after he read the packaging indicating that the connector had a flow shutdown feature. Mr. Klug purchased the FloodSafe Connectors specifically because Watts advertised and packaged them with them with details about their unique mechanism which detects excess water flow and shuts off water flow through the device to prevent flooding. This product was more expensive than other available water connectors suitable for his intended purpose.

17.     Although Mr. Klug originally purchased two FloodSafe Connectors, one was too short for his intended purpose. Mr. Klug returned that connector and accidentally replaced it with

a different and less expensive non-FloodSafe connector. Although he realized his mistake at the time, he did not want to return the connector a second time.

18.     Mr. Klug installed the FloodSafe Connector to the cold water source on his bathroom faucet. He installed the other non-FloodSafe connector to the hot water source on the same faucet.

19.     Approximately one year after the installation, on or about July 29, 2014 at 3:00 a.m., Mr. Klug heard running water. Upon investigation, Mr. Klug found that his FloodSafe Connector had fractured and failed, causing flooding in his bathroom, kitchen, two bedrooms, and several rooms on the floor below the source of the flood. The non-FloodSafe connector was still working properly.

20.     The failed FloodSafe Connector and the subsequent flooding caused a substantial amount of water damage to Mr. Klug's home. He had to dry out, repair, and/or replace a bathroom vanity, his kitchen and basement floors, and his basement ceiling and fixtures.

21.     The failed FloodSafe Connector and the subsequent flooding also caused a substantial amount of water damage to products within Mr. Klug's home, including damage to electronics, an entertainment center, toys, guns and ammunition, suitcases, and a heater.

22.     Photographs of the Watts FloodSafe Connector that failed and caused damage to Mr. Klug's real and personal property is shown below as Figure A:



Figure A: Failed FloodSafe Connector

23.     The damage to Mr. Klug's real and personal property cost Mr. Klug approximately $4,000.00 out-of-pocket for repairs and replacement property over and above costs covered by his homeowners' insurance. Mr. Klug notified Watts of the defective water line after its failure, as he believes that this product should last more than one year and should have shut off the flow of water as advertised.

24.     Additionally, on or about January 26, 2015, the Klug family had an electrical short in one of the ceiling lights which had filled with water during the earlier flooding. Although there were no open flames, the basement filled with smoke. Luckily the family was home at the time and was able to turn off the electricity quickly. Upon information and belief, the fire inspector observed that the wiring short may have been related to the earlier flooding. Despite an estimated $1,600.00 in smoke damage, Mr. Klug did not file an insurance claim due

to the amount of his deductible. He is currently renovating and repairing the basement.

25.     Mr. Klug would not have purchased and installed the FloodSafe Connector and exposed his real and personal property to flooding and water damage, as well as exposing himself and his family to a risk of personal injury directly related to the flooding (including but not limited to placing them at a risk of electrocution and fire due to flooding in the proximity of electrical currents) had Watts disclosed the propensity for the FloodSafe Connector to spontaneously fracture and fail.

***Defendants***

26.     Defendant Watts Water Technologies, Inc. is a Delaware corporation with its corporate headquarters and principal place of business located at 815 Chestnut Street, North Andover, Massachusetts 01845-6098.  Watts Water Technologies, Inc. conducts substantial business in Nebraska and throughout the United States, including through the sale and distribution of its FloodSafe Connectors which can be purchased at stores such as Home Depot, Lowe's, Menards, TrueValue, and Ace Hardware.

27.     Defendant Watts Regulator Company is a wholly owned subsidiary of Watts Water Technologies, Inc. Watts Regulator Company is a Massachusetts corporation, also with its principal place of business located at 815 Chestnut Street, North Andover, Massachusetts 01845-6098.  Watts Regulator Company conducts substantial business in Nebraska and throughout the United States, including through the sale and distribution of its FloodSafe Connectors which can be purchased at stores such as Home Depot, Lowe's, Menards, TrueValue, and Ace Hardware.

28.     Defendants Watts Water Technologies, Inc. and Watts Regulator Company are referred to collectively herein as "Defendant," "Defendants" or "Watts."

## JURISDICTION AND VENUE

29.     This Court has jurisdiction over this class action pursuant to 28 U.S.C. §1332(d), as this matter is brought as a class action under Rule 23 of the Federal Rules of Civil Procedure. Moreover, there are more than 100 Class Members residing in multiple states, and the amount in controversy exceeds Five Million Dollars ($5,000,000.00). The requirement of minimal diversity is met as the dispute is between citizens of different states.  Plaintiff Klug is a resident and citizen of Nebraska; Defendant Watts Water Technologies, Inc. is a Delaware corporation and citizen of Massachusetts; and Defendant Watts Regulator Company is a Massachusetts corporation and citizen of Massachusetts.  The Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

30.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, *et seq*. because a substantial part of the events or omissions giving rise to the claim occurred in this District. Additionally, Watts regularly conducts substantial business in this District, including by the sale and distribution of its FloodSafe Connectors.

## SUBSTANTIVE ALLEGATIONS

31.     Watts designed, manufactured, assembled, tested, labeled, marketed, advertised, and offered for distribution and sale FloodSafe Connectors for the safe movement of water within property structures, such that they would be installed by builders, plumbers and consumers in homes and other buildings throughout the United States.   The FloodSafe Connectors were touted as a safe product of merchantable quality, and fit for their intended and reasonably foreseeable uses, despite their hidden defects.

32.     The FloodSafe Connectors are used to transport water from the building's plumbing system to a water source or appliance (e.g., from the water supply to a faucet,

dishwasher, toilet, washing machine, or icemaker).  See Figure B Below.



Figure B. Watts' Advertising regarding FloodSafe Product Line.

33.     The FloodSafe Connectors primarily consist of a standard braided stainless steel flexible hose and a FloodSafe shutoff device (the "FloodSafe Device") located on the inlet side of the hose.  The FloodSafe Device is intended to detect when water flow exceeds a preset flow rate (*i.e.,* evidence of a flood) and, upon such detection, prevent water from passing through the FloodSafe Device, thereby protecting consumers' property.

34.     Watts FloodSafe connectors are sold under the "FloodSafe" brand name in specific product lines for specific purposes. For example, faucet connectors include all models in the FS-CFC-S product line. Toilet connectors include all models in the FS-CTC-S product line. Dishwasher connectors include all models in the FS-CDC-S product line. Washing machine connectors include all models in the FS-CWM-S product line. Ice Machine connectors include all models in the FS-CIC-S and LFFS-CIC-S product lines.

35.     Watts knowingly fails to disclose that its FloodSafe Connectors are subject to a serious design defect, are unsafe, and pose a substantial risk of failure, in that FloodSafe Connectors fracture and fail at the shut-off device in a manner that prevents the FloodSafe Device from stopping the water flow and actually causes catastrophic flooding and damage to building owners' real and personal property.  Even since the FloodSafe Connectors began failing

(and Watts had notice and knowledge of the defect through customer complaints and subrogation claims), Watts has continued to market and sell the FloodSafe Connectors and has failed to notify consumers of the defects and the risks to consumers' property due to this product's known defectiveness.

A.   **Watts' Claims Regarding Product Quality**

36.   On its website,[2] Watts touts that: "We offer the highest level of quality in all our capabilities, from innovative design & manufacturing to distribution, sales, and service."

37.   Watts' website also states that: "[t]he Watts Water family of brands & companies is backed by 130+ years of engineering excellence and innovation. All of our products follow a rigorous design protocol through our R&D teams, including:

- Custom design & prototyping
- Advanced design & testing systems
- Computational fluid dynamics software
- State-of-the-art data acquisition systems
- Best-in-class quality control processes."

38.   Watts' statements are clear and unambiguous -- consumers can depend on the Company's products, including its FloodSafe Connectors, because they are "the highest level of quality," and have been rigorously designed and tested. None of the statements made by Watts would be considered "puffery" by an ordinary consumer when considering the purchase of a Watts product.

39.   Watts also claims on its website that FloodSafe Connectors "protect against catastrophic water damage caused by burst, broken or ruptured water supply hoses and fittings."

---

[2] *See* http://www.wattswater.com/About-Us/Capabilities

Its product packaging proclaims that its products "Protect Against CATASTROPHIC Water Damage!"

40.     Watts also makes statements regarding specific qualities of the Floodsafe Connectors in product claims included in several videos that the Company has posted to a YouTube webpage (*See, e.g.*     http://www.bing.com/videos/search?q=watts+floodsafe+youtube&FORM=VIRE1#view=detail&mid=B83F6E196C9225B8FE36B83F6E196C9225B8FE36).

41.     Watts claims that the FloodSafe Connectors are "maintenance free" and "[t]he only economical and secure safeguard against catastrophic water damage available on the market."

### B.   Watts' Warranty

42.     Watts currently provides a one-year limited express warranty on each of its FloodSafe Connectors.  It is uncertain whether Watts provided a longer warranty prior to its current version. Pursuant to its current warranty, Watts "warrants each product to be free from defects in material and workmanship under normal usage for a period of one year from the date of original shipment. In the event of such defects within the warranty period, the Company will, at its option, replace or recondition the product without charge."

43.     The warranty is made subject to the following "Exclusions":

"The Company shall not be responsible for any incidental, special or consequential damages, including without limitation, lost profits or the cost of repairing or replacing other property which is damaged if this product does not work properly, other costs resulting from labor charges, delays, vandalism, negligence, fouling caused by foreign material, damage from adverse water conditions, chemical, or any other circumstances over which the Company has no control. This warranty shall be invalidated by any abuse, misuse, misapplication, improper installation or improper maintenance or alteration of the product."

### C.      Watts FloodSafe Connectors Are Defective

44.      Prior to the purchase of their FloodSafe Connectors by Plaintiff and the Class members, Watts was aware that its FloodSafe Connectors contained a manufacturing and design defect that caused them to fracture and fail, and that the defect was present at the point of sale. The Company's knowledge is ascertainable due to the Company's receipt of many consumer complaints both online and directly to the company, warranty claims, and distributor reports and returns of defective FloodSafe Connectors, as well as through insurance subrogation claims.

45.      For example, the following complaints appeared on http://forums.jlconline.com/forums/showthread.php?49064-Flood-safe-Supply-line-horror-stories as early as 2009:

09-03-2009, 12:15 AM#1
davenorthup
Veteran Contributor
FLOOD SAFE SUPPLY LINE HORROR STORIES
Who's got them????
I do - DW supply line decided to fail after 3 months. Spontaneous disconnect between the hose and safety part. Just decided to go.

Thankfully, ran only 5 minutes in the occupied house. The HO could not safely get to the valve because the stream of hot H2O.
UGGGHHH.....
Lesson learned - those will never darken the door of another project again. Anyone ever make an attempt to be compensated by the manufacturer in a scenario like this?


09-03-2009, 01:00 AM#7

davenorthup
Veteran Contributor
RE: FLOOD SAFE SUPPLY LINE HORROR STORIES
I did email them last night - have not heard back yet.

The photos are on a camera in Anchorage and the parts are in the mail to me. I

have not seen anything yet personally. We shall see. I will post them if I get them, I am about to disappear for 2 weeks in a few days so it will be when I return if not sooner. I am going to the other Dicks house - Dick Proeneke that is...

I thought they were a good idea; especially in the environment that we installed them in. I am having the plumber take the rest out - I'll take my chances on regular supply lines from now on..


09-07-2009, 05:03 PM#18
davenorthup
Veteran Contributor
RE: FLOOD SAFE SUPPLY LINE HORROR STORIES
Originally Posted by charles
Will you let us know when you are certain?
It was a Watts for certain. I have been in contact with them, the HO and the neighbors. They sent me a claim form (Watts) and that is where we are at for now. They (Watts) planted the seed thinking it was over tightened and an install error, I watched the install and even saw the plumber reading the instructions - they are very good plumbers....

I'll be back in 2 weeks to pursue this one. It is in insurance land now, thankfully one of the parties involved has worked in insurance for over 40 years.

46.    In    addition,    on    another    online    forum, http://terrylove.com/forums/index.php?threads/watts-floodsafe-not-very-part-1.26673/page-2,    a poster contributed a similar complaint in May 2011 under the title "Exact Same Failure with WATTS":

My friend and I just purchased a condo near Disney. We put in all new hardwood floors, furniture, paint, appliances, and electronics. His Dad installed the dishwasher line and decided to spend the few extra bucks to be safe and buy the floodsafe line from WATTS. I wish we had found this thread beforehand.

[Three] days after they left and after running the dishwasher several times, the line blew and ran for who knows how long flooding ours and our new neighbors below. It is the exact same issue as the other posts. It failed in the same place in the same manor. I could post pictures but my files are too large and I'm too lazy to resize. We even called in two plumbers to attest that it was installed properly and was a failure of the line not the installer.

I would like to talk to anyone else that his has happened to and understand what

ever became of it, who covered the claim, etc. We have a claim in with WATTS right now. I'm a little concerned now about resolution based on what I've read. Please reply to this post or try email at d g a four two zero at hotmail. Or post if you need to rent a place near Disney. We have a lot of unforeseen expenses to make up for.

dga, May 12, 2011

47.     Despite its knowledge, Watts did not disclose to its customers or prospective purchasers of the substantial risk that the FloodSafe Connectors would manifest a known defect, specifically that the FloodSafe Connectors can and do fracture in such a way that the FloodSafe Device fails to stop the flow of water (hereinafter called the "Defect").

48.     Consumers who purchased the FloodSafe Connectors had no way of knowing that these connectors were defective at the point of sale. Nor could the consumers detect abnormalities or flaws which would indicate that their FloodSafe Connector was likely to fracture and fail without warning under normal use.

49.      The defect is a manufacturing and design flaw within the FloodSafe Device component of the FloodSafe Connectors.  The defect causes the FloodSafe Device to fracture just in front of the device's mechanisms which attaches to the water source. In other words, the connector fails on the wrong side of the FloodSafe Device, thereby allowing a free flow of water into consumer's home or place of business.

50.     The defect commonly and frequently found in the FloodSafe Devices is consistent with metallurgical abnormalities within the material from which the Device is manufactured; dezincification of the material of the Device; and/or a design which includes a very thin cross section at the typical point of failure, all of which are frequently exacerbated by overtightening of the component parts of the FloodSafe Device during the manufacturing assembly process.

51.     Once the FloodSafe Device has detached from the water source as a result of the

Defect, water flows freely from the water source resulting in catastrophic flooding. Despite Watts' repeated assurances that FloodSafe Connectors prevent catastrophic flooding, because of the location of failure, the defective nature of the FloodSafe Connector causes catastrophic flooding rather than preventing it.

52.     Despite Watts' knowledge of that its product is defectively manufactured and designed, FloodSafe Connectors are still being sold and installed in residential and commercial buildings across the country.

**D.      Inadequate Labeling and Warnings**

53.     Watts has a duty to adequately design and manufacture its FloodSafe Connectors to keep them from failing and to provide warnings as to how they could fail because of their defective nature. Watts' labels fail to warn that the FloodSafe Connectors will fail due to the defective manufacture and design described above.

54.     The label also fails to identify the gravity of the hazards that can result from the failure of the connector and that such failure is likely to cause water damage, flooding, and even catastrophic flooding. Furthermore, the label fails to warn that the product's failure may pose extremely dangerous safety risks, including a risk of electrocution and/or an electrical fire (like that of Plaintiff Curtis Klug) if the FloodSafe Connectors fail and flooding occurs in the proximity of electrical appliances or sources. The label contains no warnings regarding how to avoid these risks, how to inspect for signs of failure, and no disclosure that after the warranty period the FloodSafe Connectors should be replaced or they have a greater likelihood of failure.

55.     In fact, the label does the opposite of informing consumers that the product might fail and cause catastrophic flooding. The labeling on these products gives consumers a false sense of security, and reasonably, consumers rely on the affirmations and promises offered by

Watts. For example, the packaging in which Watts' FloodSafe Washing Machine Connector is sold states: "Protect Against CATASTROPHIC Water Damage!," "Protects against water damage due to burst, broken, or ruptured water supply hose or fittings," and "Automatically senses the rupture and shuts the water supply off when the flow of water exceeds the design rate." See Figure C, below.



Figure C.

56.     Without proper warnings, Plaintiff and the Class are left to determine on their own whether their FloodSafe Connectors are as reliable as the manufacturer falsely claims, and to determine if and when the connectors will fail as a result of their manufacturing and design

defect. Furthermore, an external inspection of the FloodSafe Connectors is an ineffective method to determine whether FloodSafe Connectors will fracture and fail. Thus, consumers have absolutely no forewarning of the imminent failure of their FloodSafe Connectors.

### E.      Plaintiff and the Class Suffered Damages

57.      As set forth in detail above, Plaintiff and the Class suffered harm as a direct result of Watts' actions because their FloodSafe Connectors contained material manufacturing and design defects which caused the FloodSafe Connectors to fail, causing harm not only to the FloodSafe Connectors, but also to other real and personal property.  In addition, because of the flooding that actually has or will occur due to the defect described herein, there is a serious risk of bodily harm to Class members. In the event that flooding takes place in areas where electrical circuits, outlets, appliances, and related household items are located, flooding caused by this defect could result in the electrocution of someone who may come into contact with or near those items as water is an electrical conductor, or could cause fires related to water damage to electrical appliances. Furthermore, flooding could cause someone to slip and suffer bodily injury.

58.      Plaintiff and the Class had a reasonable expectation that the useful life of the FloodSafe Connectors was at least 8-12 years.  A competitor named Floodchek has a 20-year warranty on similar water supply lines.[3] This 8-12 year time period would equate to approximately the same useful life as the appliance or fixture to which the FloodSafe Connectors is affixed.

59.      The FloodSafe Connectors' manufacturing and design defect, however, caused Plaintiff's and the Class members' FloodSafe Connectors to experience premature failure that is disproportionate to the age of the appliances or fixtures.

---

[3] *See* http://www.floodchek.com/resources/braided-wire-washer-hose.html

60.     The injuries sustained by Plaintiff and the Class flow directly from the core common facts surrounding Watts' misconduct, including, without limitation: (a) that the FloodSafe Connectors suffer from a manufacturing and design defect known to Watts that leads to the fracture of the FloodSafe Device from the water source; (b) that the FloodSafe Connectors were defective for their intended use at the time of sale; (c) that Watts does not provide adequate warnings concerning the defective nature of the FloodSafe Connectors; and (d) that Watts, despite knowing of the manufacturing and design defects, fails to provide any public notice or warning, or institute a recall to repair or replace the defective FloodSafe Connectors.

61.     Plaintiff's and Class members' damages include, without limitation: (a) amounts paid for the defective FloodSafe Connectors; (b) amounts paid to remediate real and personal property damage caused by flooding after the failure of the FloodSafe Connectors; (c) amounts paid to replace defective FloodSafe Connectors; and (d) expenses incurred on incidental and consequential damages.  Furthermore, Plaintiff and the Class lost the benefit of the bargain with respect to their purchase of the FloodSafe Connectors in that they would not have purchased the Floodsafe Connectors if they had they known of the defects that existed at the point of sale, or they would not have paid the price they paid, wrongly believing that the FloodSafe Connectors were not defective.  In addition, there is a serious risk of harm to Plaintiff or members of the Class if they come into contact with any electrical outlet, appliance or related item, as water flooding from the defective connector is a conductor of electricity, or if they suffer bodily injury as a result of flooding from failed FloodSafe Connectors.

62.     Many problems and defects outlined herein have occurred across the country and complaints been reported to Watts. Upon information and belief, some insurance companies have filed subrogation lawsuits against Watts related to the defective FloodSafe Connectors in order to

recover monies paid by the insurance companies to their insured clients for flooding and related property damage.

## CLASS ACTION ALLEGATIONS

63.    This action is brought and is properly maintained as a nationwide class action pursuant to FED. R. CIV. P. 23 on behalf of a class defined as follows:

> All individuals and entities that own or have owned Watts FloodSafe Connectors; or who own or have owned homes or other structures physically located in the United States, in which Watts FloodSafe Connectors are or were installed (the "Class").  Excluded from the Class is Watts, any entity in which Watts has a controlling interest, and Watts' legal representatives, assigns and successors.

64.    Alternatively, or in addition to the nationwide Class claims, Plaintiff brings these claims under FED. R. CIV. P. 23 on behalf of himself and on behalf of a Class of individuals and entities residing in Nebraska ("Nebraska Subclass").  The Nebraska Subclass is defined as:

> All individuals and entities residing in the State of Nebraska that own or have owned Watts FloodSafe Connectors; or who own or have owned homes or other structures physically located in the State of Nebraska, in which Watts FloodSafe Connectors are or were installed (the "Class").  Excluded from the Class is Watts, any entity in which Watts has a controlling interest, and Watts' legal representatives, assigns and successors.

65.    Plaintiff reserves the right to redefine the Class (and/or Subclass) prior to the certification of the Class.

66.    The Class is so numerous that individual joinder of all Class members is impracticable.  The actual number of Class members is unknown at this time, but numbers in the thousands.

67.    There are numerous questions of law and fact that are common to Plaintiff and the Class that are susceptible to common answers by way of common proof and that predominate over any questions that may affect individual Class members, including, without limitation:

a.    Whether Watts' FloodSafe Connectors are defective;

b.      Whether   Watts'   FloodSafe   Connectors   suffer   from   common manufacturing and design defects, as alleged herein;

c.      Whether  the  manufacturing  and  design  defects  concerning  Watts' FloodSafe Connectors result in the FloodSafe Connectors being prone to fracture and failure to perform the task for which they were designed;

d.      Whether Watts knew or should have known of the defect in the FloodSafe Connectors prior to putting them into the stream of commerce for purchase by Plaintiff and the Class;

e.      Whether Watts properly advises consumers about the likelihood of the FloodSafe Connectors' premature failure;

f.      Whether Watts owes a duty to Plaintiff and the Class to exercise reasonable and ordinary care in the formulation, testing, design, manufacture, warranting and marketing of the FloodSafe Connectors;

g.      Whether Watts breached its duty to Plaintiff and the Class by designing, manufacturing, advertising and selling to Plaintiff and the Class defective FloodSafe Connectors;

h.      Whether Watts breached its duty to Plaintiff and the Class by failing promptly to remove the defective FloodSafe Connectors from the marketplace or take other remedial action;

i.      Whether the FloodSafe Connectors fail to perform in accordance with the reasonable expectations of ordinary consumers;

j.      Whether the FloodSafe Connectors fail to perform as advertised, marketed and warranted;

k.      Whether Watts breached its express warranties to Plaintiff and the Class

by advertising, marketing and selling defective FloodSafe Connectors to Plaintiff and the Class;

l.     Whether Watts breached its implied warranties to Plaintiff and the Class by advertising, marketing and selling FloodSafe Connectors that were not of a merchantable quality, nor fit for the ordinary purpose for which they were sold;

m.     Whether Plaintiff and the Class are entitled to compensatory damages, and the amount of such damages for the replacement and remediation of the FloodSafe Connectors;

n.     Whether Watts' representations regarding the suitability and exemplary nature of its FloodSafe Connectors, and its omissions and concealment of facts to the contrary regarding the FloodSafe Connectors' manufacturing and design defect constitute violations of state consumer protection laws;

o.     Whether Watts has been unjustly enriched by its conduct, as alleged herein; and

p.     Whether Watts should be required to notify all Class members about their defective FloodSafe Connectors.

68.     Plaintiff has the same interests in this matter as all Class members, and his claims are typical of all Class members.

69.     Plaintiff will fairly and adequately represent the interests of the Class members and does not have interests adverse to the Class.  Plaintiff is committed to pursuing this action and has retained competent counsel experienced in the prosecution of consumer class actions. Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the Class, and have the financial resources to do so.

70.     Class certification is appropriate pursuant to FED. R. CIV. P. 23(b)(1) because the prosecution of separate actions by individual Class members would create a risk of inconsistent

or varying adjudications which would establish incompatible standards of conduct for Watts, and/or because adjudications with respect to individual Class members would as a practical matter be dispositive of the interests of non-party Class members.

71.     Class certification is appropriate pursuant to FED. R. CIV. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to the Class as a whole.  The members of the Class are entitled to injunctive relief as set forth below.

72.     Class certification is appropriate pursuant to FED. R. CIV. P. 23(b)(3) because, as set forth above, questions of law and fact common to the Class predominate over questions affecting only individual members of the Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  Furthermore, the likelihood that individual members of the Class will prosecute separate actions is remote given the extensive time and considerable expense necessary to conduct such litigation, especially when compared to the relatively modest amount of damages at issue for most individual Class members.  This action will be prosecuted in a manner to ensure the Court's able management of this case as a class action, and Plaintiff knows of no difficulty that would be encountered in the management of this litigation that would preclude its maintenance as a class action.

## **FRAUDULENT CONCEALMENT**

73.     At all relevant times, Watts affirmatively concealed from Plaintiff and the Class the manufacturing and design defect in the FloodSafe Connectors.

74.     Watts had a duty to inform Plaintiff and the Class of the defect.  Specifically, Watts has known for years of the problems and defect outlined herein through various complaint forums (including, without limitation, its own warranty program) and as the result of claims

being filed against Watts related to the defect by insurance companies.  Notwithstanding its duty to inform Plaintiff and Class members, Watts has never disclosed the defect to Plaintiff and the Class.  To the contrary, Watts consistently maintains that it "offer[s] the highest level of quality in all our capabilities, from innovative design & manufacturing to distribution, sales, and service," and that "all of [its] products follow a rigorous design protocol," that the FloodSafe Connectors are "maintenance free," and that FloodSafe Connectors are a "secure safeguard against catastrophic water damage."

75.     Plaintiff and the Class could not have discovered the defect or Watts' attempts to avoid disclosure of the defects alleged herein. Thus, the running of the applicable statutes of limitation have been tolled with respect to any claims that Plaintiff or the Class members have brought or could have brought as a result of the unlawful or fraudulent course of conduct described herein.

76.     In addition, Watts is estopped to plead any statute of limitations because it failed to disclose facts that it was obligated to disclose concerning the defects in the FloodSafe Connectors.  Watts actively concealed and misrepresented to Plaintiff and the Class members facts that were essential to understanding that Plaintiff and the Class members had claims against Watts, and Watts thus acted to prevent Plaintiff and the Class members from learning that they possessed claims against Watts. Had Plaintiff and the Class been aware of the facts which Watts misrepresented and concealed, they would have commenced suit against Watts before the running of any statute of limitations alleged to be applicable to this case.

77.     Watts is further estopped from asserting any statute of limitations defense, contractual or otherwise, to the claims alleged herein by virtue of its fraudulent concealment.

**FIRST CAUSE OF ACTION**
**Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.***

78.     Plaintiff incorporates by reference each of the foregoing allegations.

79.     Declaratory relief is intended to minimize "the danger of avoidable loss and unnecessary accrual of damages."  10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2751 (3d ed. 1998).

80.     There is an actual controversy between Watts and Plaintiff concerning:

        a.      whether the FloodSafe Connectors are defectively manufactured and designed thus causing them to fail;

        b.      whether Watts knew or should have known of the defect; and

        c.      whether Watts failed to warn against the potential unsuitability of its defectively manufactured and designed FloodSafe Connectors.

81.     Pursuant to 28 U.S.C. § 2201, the Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

82.     Despite the repeated failures of its FloodSafe Connectors, Watts has refused to acknowledge that its product is defectively designed.

83.     Accordingly, based on Watts' failure to act, Plaintiff seeks a declaration that the FloodSafe Connectors are defective in their manufacturing, design, workmanship, materials, and labeling, as alleged herein.  The defective nature of the FloodSafe Connectors is material and requires disclosure to all persons who own the FloodSafe Connectors.

84.     The declaratory relief requested herein will generate common answers that will settle the controversy related to the alleged defective manufacturing, design and labeling of the FloodSafe Connectors and the reasons for their failure. There is an economy to resolving these

issues as they have the potential to eliminate the need for continued and repeated litigation.

**SECOND CAUSE OF ACTION**
**Strict Liability – Manufacturing and Design Defect and Failure to Warn**

85.　Plaintiff incorporates by reference each of the foregoing allegations.

86.　Watts designed, manufactured, sold and/or distributed the FloodSafe Connectors to Plaintiff and the Class.

87.　The FloodSafe Connectors were defective in their manufacture and design, and were defective when they left Watts' control.

88.　Watts knew, or should have known, that the FloodSafe Connectors contained a non-obvious danger in their material composition. Watts knew that the FloodSafe Connectors were highly susceptible to failure under expected installation conditions and ordinary use, and that consumers would not repeatedly replace their FloodSafe Connectors without an instruction to do so.

89.　Watts failed to inform Plaintiff and the Class as to the FloodSafe Connectors' susceptibility to sudden failure.

90.　The FloodSafe Connectors were defective due to inadequate warnings, inadequate inspection and testing, and inadequate reporting regarding the results of quality control testing, or lack thereof.

91.　Had Plaintiff and the Class been adequately warned concerning the likelihood that the FloodSafe Connectors would fail, they would have taken steps to avoid damages by not purchasing them.

92.　Watts, after learning that its FloodSafe Connectors could fracture and fail at the automatic shut-off device, had a post-sale duty to warn consumers of the possibility that catastrophic failure and flooding could result from the failure of its FloodSafe Connectors, even

when used for their intended purpose.

93.    As a direct and proximate result of the defective condition of the FloodSafe Connectors, Plaintiff and the Class have incurred damages to both their FloodSafe Connectors and to other personal and real property in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
### Negligence

94.    Plaintiff incorporates by reference each of the foregoing allegations.

95.    Watts was negligent in that it failed to use reasonable care when it designed, manufactured, assembled, labeled, tested, distributed and sold its FloodSafe Connectors.

96.    Watts knew or should have known that its FloodSafe Connectors were defective, would fail prematurely, and were not suitable for their intended use.

97.    As the manufacturer and/or seller of a consumer product, Watts owed a duty to Plaintiff and the Class to provide a safe and quality product, and to provide a product that would perform as it was intended and expected.  Watts also owed a duty to Plaintiff and the Class to provide adequate instructions and warnings for proper and safe use of the product.  Watts further owed a duty to provide Plaintiff and the Class with information related to the FloodSafe Connectors' reasonable expected life span and information related to their maintenance and replacement.

98.    Watts breached each of these duties.

99.    As a direct and proximate result of Watts' negligence, Plaintiff and Class members have suffered damages in an amount to be determined at trial for inadequate value and the cost of repair and replacement of their defective FloodSafe Connector, as well as damage to other real and personal property which resulted from a sudden and dangerous failure of the FloodSafe Connectors, causing flooding to the property of the Plaintiff and Class Members.

**FOURTH CAUSE OF ACTION**
**Negligent Failure to Warn**

100.    Plaintiff incorporates by reference each of the foregoing allegations.

101.    Watts manufactured, designed, sold and/or distributed defective FloodSafe Connectors to Plaintiff and the Class.

102.    Watts knew or reasonably should have known that its FloodSafe Connectors were defective and dangerous and/or were likely to be dangerous when used in a reasonably foreseeable and expected manner.

103.    Watts knew or reasonably should have known that Plaintiff and the Class would not realize that their FloodSafe Connectors were defective and posed a danger of causing substantial property damage, both to the product itself, as well as to other real and personal property of Plaintiff and Class members.

104.    Watts failed to adequately warn of the danger or instruct Plaintiff and the Class that the FloodSafe Connectors' actual useful life would be far less than reasonably expected.

105.    A reasonable manufacturer, distributor, assembler, or seller under the same or similar circumstances would have warned of these dangers.

106.    Watts's negligent failure to warn or instruct Plaintiff and the Class was a substantial factor in causing the harm to the Plaintiff and Class, placing their personal safety and personal property at risk.

107.    As a direct and proximate result of the defective condition of the FloodSafe Connectors, Plaintiff and the Class have incurred damages in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**
**Breach of Express Warranty**

108.    Plaintiff incorporates by reference each of the foregoing allegations.

109.    Watts is a seller of FloodSafe Connectors.

110.    The FloodSafe Connectors are goods.

111.    Watts had knowledge of the defects alleged herein and that they posed a serious risk to consumers such as Plaintiff and the Class.

112.    Despite its knowledge, Watts expressly warranted in writing that it each if its products would be free from defects in material and workmanship under normal usage for a period of one year from the date of original shipment.

113.    Watts also expressly warranted in writing to replace or recondition defective products. Watts has not replaced or reconditioned the defective FloodSafe Connectors.

114.    These warranties, affirmations and promises were part of the basis of the bargain between Watts and Plaintiff and the Class, who relied on the existence of the express warranties.

115.    By selling to consumers such as Plaintiff and the Class members FloodSafe Connectors containing the defect after Watts had notice of the defect, Watts breached its express warranty to provide FloodSafe Connectors that were free from defects.

116.    Watts also breached its express warranty to replace or recondition the defective FloodSafe Connectors when it failed to do so despite knowledge of the defect and of alternative designs, materials and/or options for retrofits.

117.    Further, any "reconditioning" that Watts offers does not remedy the safety issue with its FloodSafe Connectors and is not adequate to remedy the serious risk of damage to other real and personal property, and other issues caused by the defect.

28

118.    The warranty of reconditioning to the FloodSafe Connectors fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the Class whole and/or because Watts has refused to provide the promised remedies within a reasonable time.

119.    At the time Watts warranted and sold its FloodSafe Connectors, it knew they did not conform to the warranties and were inherently defective, and Watts wrongfully and fraudulently misrepresented and concealed material facts regarding its FloodSafe Connectors.

120.    Accordingly, Plaintiff and the Class are not limited to the limited warranty of "reconditioning" and seek all remedies allowed by law.

121.    Upon information and belief, Watts was notified of Plaintiff Klug's FloodSafe Connector defect but failed to provide a defect-free FloodSafe Connector to Plaintiff Klug free of charge, to provide an adequate retrofit to remedy the defect, or to compensate him for the damage to his property.

122.    As detailed herein, Watts was provided with notice and has been on notice of the defect and of its breach of express written warranties through consumer warranty claims reporting problems with the FloodSafe Connectors, subrogation claims filed by insurance companies, customer complaints, and its own internal and external testing, but neverthesless failed to repair, replace or retrofit the FloodSafe Connectors to ensure that they were free of material defects or component malfunctions as Watts promised.

123.    As a direct and proximate result of the breach of express warranty alleged herein, Plaintiff Klug and the Class have incurred damages in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
### Breach of Implied Warranty of Merchantability

124.    Plaintiff incorporates by reference each of the foregoing allegations.

125.    Watts is a merchant of FloodSafe Connectors.

126.    The FloodSafe Connectors are goods.

127.    Watts's implied warranty of merchantability accompanied its sale of the FloodSafe Connectors to Plaintiff and the Class.

128.    Watts impliedly warranted that its FloodSafe Connectors were fit for their ordinary use.

129.    Watts' manufacture and design and the repeated failure of its FloodSafe Connectors made them defective and, thus, unfit for the ordinary purposes for which they are used.  The FloodSafe Connectors are not fit for ordinary use.

130.    Any effort by Watts to disclaim or otherwise limit its responsibility for its defective FloodSafe Connectors is unconscionable under the circumstances, including because Watts knew that its FloodSafe Connectors were unfit for normal use.  Through its conduct, Watts breached its implied warranty of merchantability and is liable to Plaintiff and the Class.

131.    Upon information and belief, Plaintiff has provided notice to Watts regarding the problems he experienced with his FloodSafe Connector and, notwithstanding such notice, Watts has failed and refused to remedy the problems.  Further, Watts had actual knowledge of the defect.

132.    As a result of Watts's breach of the implied warranty of merchantability, Plaintiff and the Class have incurred damages in an amount to be determined at trial.


### SEVENTH CAUSE OF ACTION
#### Unjust Enrichment

133.    Plaintiff incorporates by reference each of the foregoing allegations.

134.    Substantial benefits have been conferred on Watts by Plaintiff and the Class by

30

purchasing the FloodSafe Connectors, and Watts knowingly and willingly accepted and enjoyed those benefits.

135.    Watts knew or should have known that payments received from Plaintiff and the Class for the FloodSafe Connectors were made with the expectation that the FloodSafe Connectors would perform as represented.

136.    In light of the defects described herein, Watts's retention of these benefits is inequitable.

137.    Plaintiff and the Class are entitled to recover from Watts all amounts wrongfully collected and improperly retained by Watts, plus interest.

138.    As a direct and proximate cause of Watts' wrongful conduct and unjust enrichment, Plaintiff and the Class are entitled to an accounting, restitution, attorneys' fees, costs and interest.

**EIGHTH CAUSE OF ACTION**
**Violation of the Nebraska Consumer Protection Act**
**NEB. REV. STAT. § 59-1601, *et seq.***
**On behalf of the Nebraska Subclass**

139.    Plaintiff incorporates by reference each of the foregoing allegations.

140.    Watts' conduct violates the Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1601, *et seq.*

141.    Watts, Plaintiff and the Nebraska Class are persons as defined in Neb.Rev. Stat. § 59-1601(1).

142.    Watts' actions as set forth herein occurred in the conduct of trade or commerce as defined in Neb. Rev. Stat. § 59-1601(2).

143.    The FloodSafe Connectors are assets as defined in Neb. Rev. Stat. § 59-1601(3).

144.    Pursuant to Neb. Rev. Stat. § 59-1602, unfair methods of competition and unfair

or deceptive acts in the conduct of any trade or commerce is unlawful.

145.   Watts' conduct, including but not limited to, designing, manufacturing, marketing, and promoting the FloodSafe Connectors as described throughout this Complaint was unfair, unlawful, and a fraudulent business practice in violation of the Neb. Rev. Stat. § 59-1601, *et seq.*

146.   Watts engaged in unlawful practices including deception, false promises, misrepresentation, and/or the concealment, suppression, or omission of material facts in connection with the sale of the FloodSafe Connectors.

147.   Despite its knowledge that the FloodSafe Connectors were defective, Watts failed to disclose to Plaintiff and the Nebraska the material fact that the FloodSafe Connectors were defective and prone to fracture and fail.

148.   If Watts had disclosed the relevant material facts to Plaintiff and the Nebraska Class, they could have (and would have prevented) economic injury by purchasing an alternate connector.

149.   Instead, Plaintiff and the Nebraska Class suffered ascertainable loss caused by Watts' misrepresentations and its failure to disclose material information.

150.   Watts' violations present a continuing risk to Plaintiff and the Nebraska Class as well as to the general public.  Watts' unlawful acts and practices complained of herein affect the public interest.

151.   Because Watts' conduct caused injury to Plaintiff's and the Nebraska Class' property through violations of the Nebraska Consumer Protection Act, Plaintiff and the Nebraska Class seek recovery of actual damages, as well as enhanced damages up to $1,000, an order enjoining Watts' unfair or deceptive acts and practices, costs of Court, reasonable attorneys'

fees, and any other just and proper relief available under Neb. Rev. Stat. § 59-1609.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief, individually and on behalf of the Class:

a.     an Order certifying the Class (and/or Subclass) and appointing Plaintiff as the Class Representative, and appointing the undersigned counsel as Class Counsel;

b.     an award for equitable and injunctive relief enjoining Watts from continuing to pursue the policies, acts and practices described in this Complaint;

c.     an award of all damages and enhanced damages under statutory and common law as alleged in this Complaint, in an amount to be determined at trial;

d.     an award of pre-judgment and post-judgment interest at the maximum rate allowable by law;

e.     an award of reasonable attorneys' fees and reimbursement of costs incurred by Plaintiff and Plaintiff's counsel in connection with this action; and

f.     such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims set forth above.

Dated: February 19, 2015.                    Respectfully submitted,


By:     /s Shanon J. Carson_____
        Shanon J. Carson (PA 85957)
        Glen L. Abramson (PA 78522)
        Jeffrey L. Osterwise (PA 201859)
        **BERGER & MONTAGUE, P.C.**
        1622 Locust Street
        Philadelphia, PA 19103
        Telephone: (215) 875-4656
        Facsimile: (215) 875-4604
        Email: scarson@bm.net
                gabramson@bm.net

josterwise@bm.net
*Pro Hac Vice to be filed for G. Abramson*
*and J. Osterwise.*


Gregory F. Coleman (TN 014092)
Lisa A. White (TN 026658)
**GREG COLEMAN LAW PC**
Bank of America Center
550 Main Avenue, Suite 600
Knoxville, TN  37902
Telephone: (865) 247-0080
Facsimile: (865) 522-0049
Email: greg@gregcolemanlaw.com
          lisa@gregcolemanlaw.com
*Pro Hac Vice to be filed.*

Edward A. Wallace
Amy E. Keller
**WEXLER WALLACE LLP**
55 West Monroe Street, Suite 3300
Chicago, Illinois 60603
Telephone: 312-346-2222
Facsimile: 312-346-0022
Email: eaw@wexlerwallace.com
          aek@wexlerwallace.com
*Pro Hac Vice to be filed.*

*Attorneys for Plaintiff*