IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CURTIS KLUG, individually and on behalf of all others similarly situated; LAWRENCE NOVER, and NELS ROE,<br><br>Plaintiffs,<br><br>vs.<br><br>WATTS REGULATOR COMPANY,<br><br>Defendant. | **8:15CV61** |
| DURWIN SHARP, on behalf of himself and all others similarly situated; JOSEPH PONZO, on behalf of himself and all others similarly situated; KATHRYN MEYERS, on behalf of herself and all others similarly situated; and JOSHUA WHIPP, on behalf of himself and all others similarly situated;<br><br>Plaintiffs,<br><br>vs.<br><br>WATTS REGULATOR CO.,<br><br>Defendant. | **8:16CV200**<br><br><br><br><br><br><br><br>**MEMORANDUM AND ORDER** |

This matter is before the court on the parties' unopposed motions for preliminary approval of class action settlement, Filing No. 71 in *Curtis Klug, et al. v. Watts Regulator Co.,* ("*Klug*"), No. 8:15CV61, and Filing No. 53 in *Durwin Sharp, et al. v. Watts Regulator Co.,* ("*Sharp*"). No. 8:16CV200, and on the Stipulations withdrawing the objections of Farmers Insurance Company and State Farm (collectively, "Insurers") to the preliminary approval motions, Filing Nos. 127 and 136 in *Klug* and Filing Nos. 133 and 142 in *Sharp*.

I.    BACKGROUND

The plaintiffs in these actions first filed for preliminary approval of the Class Action Settlement on May 4, 2016.  On May 9 and 17, 2016, the Insurers, as interested parties, requested an opportunity to be heard in connection with the putative class's preliminary approval motion.  Filing Nos. 73 and 79 in *Klug* and Filing Nos. 56 and 72 in *Sharp.* On May 24, 2016, the court held a hearing on the Insurers' requests.  Thereafter, the parties and the Insurers conducted extensive negotiations in an attempt to resolve the parties' disagreements and the court delayed ruling on the parties' preliminary approval motions.

The court is now advised that defendants Watts Regulator Company ("Watts") and the Insurers have entered into settlements.  The parties and Insurers agreed to the modification of some language of the proposed Preliminary Approval Orders.[1]  The court is informed that the modifications are agreeable to all parties and the objecting Insurers. The Insurers stipulate that their objections to the parties' motion for preliminary approval and to the settlement agreements in the *Klug* and *Sharp* actions have been resolved to their

---

[1] In sum, the proposed orders have been modified to amend the settlement agreements as described in the orders and to provide the following:

    a. The Proposed Preliminary Approval Order confirms that "Claimants," a term defined in the Settlement Agreements to include subrogated insurance carriers, can object to the proposed class settlement.

    b. The Proposed Preliminary Approval Order allows subrogated insurers to opt out without obtaining the written consent of the insured in those cases where the insurer is the lawful owner with the legal right to control the claim. In addition, opt outs (as well as settlement claims submitted to the Claims Administrator) may be consolidated in a single submission, so long as all the necessary information is provided.

    c. Watts clarified that it had ceased the manufacture of all class connectors prior to December 31, 2015, and that the release provided in the Settlement Agreement is therefore limited to those products manufactured by Watts prior to 2016, thereby resolving Farmers' concerns regarding the scope of the release.

Filing No. 127 in *Klug*, Stipulation at 3-4; *see also id.* at 7-17, Ex. A, redlined version of proposed settlement agreement.

satisfaction. The Insurers have formally withdrawn their objections to the class settlements in the *Klug* and *Sharp* class actions.

The Insurers have submitted confidential memoranda setting forth the number and amount of the Insurers' subrogation claims that will be settled. Filing Nos. 130 and 134 in *Klug*; Filing Nos. 137 and 140 in *Sharp*. The court has reviewed the sealed documents and finds that the settlements will eliminate a substantial number of claims that would otherwise have been paid under the proposed *Klug* and *Sharp* class action settlements, thereby benefitting the common funds established by the proposed class settlements and better insuring that the fund will pay all claims at the maximum recovery rate. The payments to the Insurers—made independent of the settlement funds—will result in more funds available to pay claims to other settlement class members and claimants and will benefit the purported class.

II.     PARTIES' PROPOSED SETTLEMENT

In the *Klug* action, the plaintiffs allege that Watts manufactured and marketed a defective line of water supply connectors known as the FloodSafe® Auto-Shutoff Connectors ("FloodSafe Connectors"). The FloodSafe Connectors are used to supply water to common household fixtures and appliances including faucets, toilets, washing machines, dishwashers, and icemakers. The FloodSafe Connectors incorporate a device which is intended to detect when water flow exceeds a preset flow rate (i.e. evidence of a leak) and, upon such detection, prevent water from passing through. The complaint alleges the FloodSafe Connectors are defective because they fracture and fail at the shut-off device, resulting in damages sustained by plaintiffs and members of a putative class that were proximately caused by the failure of the FloodSafe Connectors. Watts denies those allegations.

In the *Sharp* action, the plaintiffs allege that Watts manufactured and marketed certain water heater supply lines (the "Water Heater Connectors") that are defective. The Water Heater Connectors are alleged to be defective because the inner-tubing is made from a thermoplastic polymer that degrades as it is exposed to metallic ions present in most water supplies causing the Water Heater Connectors to fail and begin to leak, eventually causing major water damage in class members' homes. Watts also denies those allegations.

The parties have shown that following two mediation sessions before former Eastern District of Pennsylvania Magistrate Judge Diane M. Welsh, an experienced and respected mediator, and extensive arms' length negotiations between counsel, the plaintiffs and Watts have reached class-wide settlements in both actions that, pending court approval, will fully and finally resolve the plaintiffs' claims.

For the purposes of settlement of the *Klug* action, the parties agree to certification of the following class:

> ALL INDIVIDUALS AND ENTITIES, THAT OWN OR OWNED, OR LEASE OR LEASED, A RESIDENCE OR OTHER STRUCTURE LOCATED IN THE UNITED STATES CONTAINING A FLOODSAFE CONNECTOR AFTER NOVEMBER 4, 2008.
>
> EXCLUDED FROM THE SETTLEMENT CLASS ARE: THOSE SETTLEMENT CLASS MEMBERS WHO PROPERLY EXCLUDE THEMSELVES FROM THE SETTLEMENT; THOSE SETTLEMENT CLASS MEMBERS WHO HAVE RESOLVED THEIR CLAIMS THROUGH SETTLEMENT OR JUDGMENT; WATTS DEFENDANTS AND THEIR AFFILIATES; EXCEPT TO THE EXTENT THAT THEY ACTUALLY INSTALLED A FLOODSAFE CONNECTOR, ALL THOSE BUSINESSES AND ENTITIES THAT SOLD OR DISTRIBUTED A FLOODSAFE CONNECTOR, INCLUDING CUSTOMERS, RETAILERS, RESELLERS, WHOLESALERS AND DISTRIBUTORS WHO PURCHASED OR ACQUIRED FLOODSAFE CONNECTORS FROM ANY WATTS DEFENDANT; AND THE PRESIDING JUDGE AND HIS IMMEDIATE FAMILY.

Filing No. 131 in *Klug*. For purposes of settlement of the *Sharp* action, the parties agree to certification of the following class :

> ALL INDIVIDUALS AND ENTITIES THAT OWN OR OWNED, OR LEASE OR LEASED, A RESIDENCE OR OTHER STRUCTURE LOCATED IN THE UNITED STATES CONTAINING A WATER HEATER CONNECTOR AFTER NOVEMBER 4, 2008.
>
> EXCLUDED FROM THE SETTLEMENT CLASS ARE: THOSE SETTLEMENT CLASS MEMBERS WHO PROPERLY EXCLUDE THEMSELVES FROM THE SETTLEMENT; THOSE SETTLEMENT CLASS MEMBERS WHO HAVE RESOLVED THEIR CLAIMS THROUGH SETTLEMENT OR JUDGMENT; WATTS DEFENDANTS AND THEIR AFFILIATES; EXCEPT TO THE EXTENT THAT THEY ACTUALLY INSTALLED A WATER HEATER CONNECTOR, ALL THOSE BUSINESSES AND ENTITIES THAT SOLD OR DISTRIBUTED A WATER HEATER CONNECTOR, INCLUDING CUSTOMERS, RETAILERS, RESELLERS, WHOLESALERS AND DISTRIBUTORS WHO PURCHASED OR ACQUIRED WATER HEATER CONNECTORS FROM ANY WATTS DEFENDANT; AND THE PRESIDING JUDGE AND HIS IMMEDIATE FAMILY.

Filing No. 133, Ex. A in *Sharp*.

The court has reviewed the proposed class settlement agreements. Filing No. 71-3 in *Klug*; Filing No. 53-3 in *Sharp.* The basic terms of the proposed settlement agreements are that Watts will pay a total settlement amount into a common fund of $14 million ($4 million in the *Klug* action and $10 million in the *Sharp* action). After payments for notice, claims administration, plaintiff service awards, and attorneys' fees and expenses, Watts shall pay into the common fund 40% of the remaining amount of the total settlement within 15 days after the effective date. Annually thereafter, Watts shall pay into the common fund such amounts as may be necessary to maintain 15% of the total settlement amount remaining, and shall pay into the fund the entire amount remaining after payment of the expenses, awards, fees and costs by the end of the damage claims period.

The settlement agreements provide for individual service awards of $5,000 to be awarded to each of the class representatives. Also, the agreements provide that class counsel will seek, at the time of the fairness hearing, an award of attorneys' fees and costs to be paid from the total settlement amount not to exceed 30% of the gross settlement amount.

The agreements also provide for the appointment of Epiq Systems ("Epiq"), an experienced class action settlement administrator, to provide notice and administer the settlement at a cost not to exceed $932,000.00, to be paid from the gross settlement amount. Notice will be delivered through: (i) a press release; (ii) direct mailings to relevant homeowners and/or their insurance carriers; (iii) a dedicated website; (iv) published notice in print media and internet postings designed to target home and property owners; and (v) a toll-free telephone number that will provide settlement class members with information and direct them to the settlement website. In addition, a long-form notice (or postcard notice), as approved by the court, will be mailed, first class postage prepaid, to each settlement class member and homeowner's insurance carrier that can be identified by the Settling Parties through reasonable efforts.

The agreements further provide that class settlement members or claimants will have one year from the final order and judgement to submit valid claims for the replacement remedy. Class settlement members or claimants will have one year from the final order and judgment to submit valid claims for the property damage remedy for claims that arose from November 4, 2008 to November 4, 2014. For claims arising after November 4, 2014, class settlement members must submit valid claims for the property damage remedy within four years from the final order and judgment. In addition, those class settlement members who wish to opt-out of, or object to, the settlements, will have forty-five (45) days from the notice

date to submit those opt-out or objection forms to Epiq. Also, any money remaining in the settlement fund after the end of the damage claims period, and after all valid settlement claims have been paid up to 25% of their property damage remedy, will be distributed to class settlement members and claimants who have previously submitted claims for a property damages remedy in proportion to their claims if such further distribution is cost effective, as determined by the claims administrator. The parties will thereafter make a written recommendation to the court with respect to the disposition of any undistributed funds.

III.   DISCUSSION

   A.   CLASS ACTION CERTIFICATION

Under the Federal Rules of Civil Procedure, "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a); *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997) (describing requirements as (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation). "In order to obtain class certification, a plaintiff has the burden of showing that the class should be certified and that the requirements of Rule 23 are met." *Coleman v. Watt*, 40 F.3d 255, 258-59 (8th Cir. 1994).

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). In this Circuit, numerosity requires only the impracticality, not the impossibility, of joinder. *See United States Fid. & Guar. Co. v. Lord,*

7

585 F.2d 860, 870 (8th Cir. 1978). Here, the total number of class settlement members is at least in the thousands. Numerosity is therefore easily satisfied.

Rule 23(a)(2) requires plaintiffs to establish that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Rule 23 is satisfied when the legal question linking the class members is substantially related to the resolution of the litigation." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995) (internal quotation marks and citation omitted). However, "[t]he rule does not require that every question of law or fact be common to every member of the class." *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561 (8th Cir. 1982). Further, commonality may be shown "where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated." *Paxton*, 688 F.2d at 561 (citation omitted). "[T]he commonality requirement imposes a very light burden on Plaintiff seeking to certify a class and is easily satisfied." *In re Hartford Sales Practices Litig.*, 192 F.R.D. 592, 603 (D. Minn. 1999).

The court finds there are common questions of law and fact in these cases. These include whether the FloodSafe and Water Heater Connectors suffer from a uniform defect that causes them to fail; whether Watts had a duty to disclose this alleged defect to consumers; whether Watts' warranty limitations on the FloodSafe and Water Heater Connectors are unconscionable or otherwise unenforceable under the circumstances; and whether the plaintiffs have actionable claims. Commonality is therefore easily satisfied. *See In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 619 n.7 (8th Cir. 2011) (finding allegation of universal defect in plumbing products satisfied commonality requirement because "evidence of a universal defect raises a critical question common to all members of the classes").

Rule 23(a)(3) requires that a representative plaintiff's claims be "typical" of those of other class members. Fed. R. Civ. P. 23(a)(3). The Eighth Circuit long ago defined typicality as requiring a demonstration that there are other members of the class who have the same or similar grievances as the plaintiff. *Chaffin v. Rheem Mfg. Co.*, 904 F.2d 1269, 1275 (8th Cir. 1990). Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory. *Id. see also Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996). The burden to establish typicality is "fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer*, 64 F.3d at 1174. Moreover, "differences in the claimed damages or the availability of certain defenses do not defeat typicality, as long as the class claims are generally based on the same legal or remedial theory." *Morris v. Wachovia Sec. Inc.*, 223 F.R.D. 284, 295 (E.D. Va. 2004). All of the plaintiffs' claims arise out of the same alleged conduct by Watts—the design, manufacture, and sale of the allegedly defective FloodSafe and Water Heater Connectors.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." *See* Fed. R. Civ. P. 23(a)(4). "The focus of Rule 23(a)(4) is whether: (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Paxton*, 688 F.2d at 562-63.

The plaintiffs in this case have shown they own or owned, or lease or leased, a residence or other structure located in the United States containing a FloodSafe or Water Heater Connector after November 4, 2008. Further, each of the plaintiffs were allegedly injured in the same manner based on the same alleged defects. They have also each

9

actively participated in the litigation of these cases, and have been in regular communication with their attorneys regarding these proceedings.

The Settlement Agreements designate the following four attorneys as Lead Class Counsel: Bryan L. Clobes of Cafferty Clobes Meriwether & Sprengel LLP, Joseph G. Sauder of McCune Wright LLP, Gregory F. Coleman of Greg Coleman Law Firm, and Shanon J. Carson of Berger & Montague, P.C. The court finds these lawyers have invested considerable time and resources prosecuting these cases and are experienced in litigating complex class action and consumer lawsuits.  Further, class counsel were successful in negotiating a substantial settlement for the proposed classes.  Based on the results achieved here, the court finds these four attorneys should be appointed as Class Counsel for the Settlement Classes.

Federal Rule of Civil Procedure 23(b)(3) has two components: predominance and superiority. Under Rule 23(b)(3), the court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The requirements of 'predominance of common issues' and 'superiority' are stated in Rule 23(b)(3) in the conjunctive; both must be present for an action to be maintained under that provision." *Bryant v. Bonded Account Serv./Check Recovery*, 208 F.R.D. 251, 261 (D. Minn. 2000).

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 623. "When there are issues common to the class that predominate, 'the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual

class members.'" *Day v. Celadon Trucking Servs., Inc.*, 827 F.3d 817, 833 (8th Cir. 2016) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, ––– U.S. ––––, 136 S. Ct. 1036, 1045 (2016)). The district court must perform a rigorous analysis before determining that issues common to the class predominate over issues that differ among the individual class members. *Comcast Corp. v. Behrend*, ––– U.S. ––––, 133 S. Ct. 1426, 1432 (2013); *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 478 (8th Cir. 2016). "At the core of Rule 23(b)(3)'s predominance requirement is the issue of whether the defendant's liability to all plaintiffs may be established with common evidence. . . . If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question." *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 998 (8th Cir. 2016) (quoting *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1029 (8th Cir. 2010)).

The court finds that there are common questions of law and fact that predominate over any questions that may affect individual class settlement members. The issue of liability for designing, manufacturing, and selling allegedly defective FloodSafe and Water Heater Connectors and allegedly failing to disclose the existence and scope of the alleged defects is an issue that is common to all class members and subject to generalized proof. Accordingly, the predominance prong of Rule 23(b)(3) is satisfied.

"The superiority requirement involves showing 'that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Perras v. H & R Block*, 789 F.3d 914, 916 (8th Cir. 2015) (quoting Fed. R. Civ. P. 23(b)(3)). Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation. *See, e.g., Califano v. Yamasaki*, 442 U.S. 682, 701 (1979) (noting "the class-action device saves the resources

11

of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23.").

The court finds a class action is superior to other methods of litigation in these cases. The Settlement Agreements provide members of the Settlement Class with prompt, predictable, and cost-effective relief. The administrative procedures in the agreements ensure due process. Because individual damage recoveries are relatively small, it is unlikely that a plaintiff could prosecute an action on his or her own. Also, joinder of all the settlement class members in a single proceeding would be impracticable, if not impossible, because they are numerous and are located across the country.

The court finds, for the purposes of settlement only, that the classes in these actions meet the requirements of Federal Rule of Civil Procedure 23 for class certification, including numerosity, commonality, typicality, predominance of common issues, and superiority. Further, the court finds the proposed class representatives and class counsel are adequate to represent the settlement classes. Accordingly, provisional certification of the proposed settlement classes is appropriate.

    B.      PRELIMINARY APPROVAL OF SETTLEMENT

In considering preliminary approval, the court makes a preliminary evaluation of the fairness of the settlement, prior to notice. MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.632 (2010); *see also* Fed. R. Civ. P. 23(e). Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise of claims brought on a class-wide basis. Specifically, Rule 23(e) outlines a two-step process by which district courts must first determine whether a proposed class action settlement warrants preliminary approval and then, after notice of the settlement is given to class members, whether final approval is justified. *See, e.g.*, MANUAL FOR COMPLEX LITIG. at § 30.41. The purpose of a court's

preliminary evaluation of proposed settlements is simply to determine whether it is within the "range of reasonableness" and, thus, whether notice to the Class of the terms and conditions of the settlement, and the scheduling of a formal fairness hearing, are worthwhile. *See* 4 *Newberg on Class Actions*, § 11.26.

A district court is ultimately required to consider four factors in making a final determination that a settlement is fair, reasonable, and adequate: (1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement. *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 931 (8th Cir. 2005). A court may also consider procedural fairness to ensure the settlement is "not the product of fraud or collusion." *Id.* at 934. The experience and opinion of counsel on both sides is also a consideration, as well as whether a settlement resulted from arm's length negotiations, and whether a skilled mediator was involved. *See DeBoer*, 64 F.3d at 1178. The timing of the settlement—including whether discovery has proceeded to the point where all parties are fully aware of the merits of the case—is also a relevant factor. *See City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996).

The present motion falls within the preliminary stage of the Rule 23(e) approval process. "This preliminary determination establishes an initial presumption of fairness when the court finds that: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected. *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995).

The notice of a class action settlement "need only satisfy the 'broad "reasonableness" standards imposed by due process.'" *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1153 (8th Cir. 1999) (quoting *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975)). It is adequate if it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). To satisfy due process, the notice must reflect a desire to actually inform. *Mullane*, 339 U.S. at 315. The notice plan should take reasonable steps to update addresses before mailing and provide for re-mailing of notices to better addresses when returned as undeliverable. *See Jones v. Flowers, 547 U.S. 220, 226-27 (2006)*.

The court is familiar with this litigation and finds the cases have been vigorously litigated. There is no suggestion that the agreement is the result of any fraud or collusion. Discovery has progressed to a sufficient point. The class settlement agreements are the result of arm's length negotiations involving a skilled mediator. In view of the attendant risks and burdens of continued litigation, the total class settlement recovery of approximately $14 million dollars appears, on preliminary review, to provide a fair, reasonable and adequate result for class members and is within the range of reasonableness.

The court finds the parties have shown—based on the claims and defenses in this action, its procedural posture, the anticipated time and expense of protracted litigation, and the separate settlements of the claims of objecting Insurers—that the proposed settlement is in the best interests of the class. The parties have addressed and resolved several issues in the course of the Insurers initial objections to the settlements. The proposed settlements obviate the risk of further delay. In light of disputes on liability and the vagaries

14

of a jury trial and potential appeals, the proposed settlement appears, upon preliminary review, to be within the range of reasonableness.  Further, the amounts provided for attorney fees and class representative payments are clearly disclosed to class members.

Further, the court has reviewed the proposed notices and forms.  The court finds the proposed class settlement claim form is not overly complicated or technical.  Taking into account the nature of the claims, the facts presented, and the size of the class, the court finds that the combination of the summary postcard notice delivered by mail and the reference to a website that contains the complete notice, the claim form, the proposed settlement agreement, and other case information, is the best notice practicable under the circumstances.  Accordingly, the court finds the proposed form and method for notifying the class members of the settlement and its terms and conditions meets the requirements of Fed. R. Civ. P. 23(c)(2)(B) and satisfies due process.  The court approves the form and substance of the proposed notices and claim form described in the proposed class settlement agreements.

Accordingly, the court finds the proposed settlement should be submitted to the class members for their consideration.  A fairness hearing under Federal Rule of Civil Procedure 23(e) will be scheduled, after which an order of final approval will issue.

IT IS ORDERED:

1.  The plaintiffs' unopposed motion for class certification and for preliminary approval of class action settlement (Filing No. 71 in 8:15CV61 and Filing No. 53 in 8:16CV200) are granted.

2.  The stipulations withdrawing the objections of Farmers Insurance Company and State Farm to the preliminary approval motions (Filing Nos. 127 and 136 in 8:15CV61 and Filing Nos. 133 and 142 in 8:16CV200) are granted.

3. Orders of Preliminary Approval in conformity with this Memorandum and Order and in substantial conformity with the parties' proposed preliminary orders will issue this date.

Dated this 7th day of December, 2016.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge